IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THE PARKS CONDOMINIUMS on its own behalf and on behalf of its members, § § § § Plaintiff, § § V. § § THE PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY, § § § § § Defendant. § | No. 3:22-cv-2500-L |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Defendant Princeton Excess and Surplus Lines Insurance Company ("PESLIC") has filed a Motion to Compel Appraisal and Abatement. *See* Dkt. No. 16.

Plaintiff The Parks Condominiums ("Parks") have responded, *see* Dkt. No. 20, and PESLIC filed a reply, *see* Dkt. No. 24.

United States District Judge Sam A. Lindsay has referred this motion to the undersigned United States Magistrate Judge for hearing, if necessary, and findings, conclusions, and a recommendation under 28 U.S.C. § 636(b). *See* Dkt. No. 17.

For the reasons explained below, the Court should grant in part and deny in part PESLIC's Motion to Compel Appraisal and Abatement [Dkt. No. 17].

**Background**

This case concerns alleged damages to The Parks Condominiums and the consequent insurance claim. Parks alleges that Winter Storm Uri damaged its condominium complex around February 2021. *See* Dkt. No. 16 at 1.

PESLIC alleges that it paid a total of $357,640.28 throughout the initial adjustment period for damages to Parks's property. *Id.* Parks alleges that PESLIC failed to pay additional damages, and Parks sent a pre-suit demand to PESLIC on January 17, 2022, requesting $923,809.37. *See id.* at 2; Dkt. No. 21 at 4.

PESLIC sent Parks a letter on February 18, 2022, which Parks alleges paid some of the damages requested and denied the rest. *See* Dkt. No. 21 at 4.

Parks then filed suit in Dallas County state court, and PESLIC removed the suit to this court. *See id.*

Parks brings claims for breach of contract and violations of the Texas Insurance Code, alleging that PESLIC failed to promptly pay Parks's claim and seeking damages. *See* Dkt. No. 1-2 at 10-11.

The parties participated in alternative dispute resolution on August 1, 2023, which resulted in the outcome – "continuing to work with parties to reach a settlement." Dkt. No. 13. Parks designated experts on August 7, 2023, and submitted supplemental documents regarding designation of experts on August 16, 2023. *See* Dkt. No. 14.

PESLIC invoked appraisal in accordance with its policy on August 24, 2023. *See* Dkt. No. 16 at 4. And then PESLIC filed this motion. *See* Dkt. No. 16.

**Legal Standards**

When a case is removed on diversity grounds, "the Court applies Texas substantive law." *Elevia, Inc. v. Amguard Ins. Co.*, No. CV H-19-4028, 2020 WL 6192008, at *1 (S.D. Tex. May 21, 2020).

"Under Texas law, enforcement of appraisal clauses is favored. Such clauses are ubiquitous in Texas insurance contracts, and they have often helped policyholders and insurers to resolve disputes without resorting to litigation." *Meadows v. Allied Prop. & Cas. Ins. Co.*, No. 1:19-CV-2-H, 2020 WL 6122543, at *1 (N.D. Tex. Jan. 7, 2020) (citations omitted); *accord In re Universal Underwriters of Texas Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011) ("These clauses are generally enforceable, absent illegality or waiver. …. Appraisals can provide a less expensive, more efficient alternative to litigation, and [the Texas Supreme Court] recently held that they 'should generally go forward without preemptive intervention by the courts.'" (quoting *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009))).

"[I]f an appraisal clause is properly invoked and one party to the contract refuses to participate in the appraisal process, a court lacks discretion not to issue an order compelling that party to participate." *Woodward v. Liberty Mut. Ins. Co.*, No. CIVA 3:09-cv-228-G, 2010 WL 1186323, at *3 (N.D. Tex. Mar. 26, 2010).

If the Court determines appraisal is appropriate, a party can still waive appraisal. *See Hart Chesnutt, LLC v. Covington Specialty Ins. Co.*, 622 F. Supp. 3d 306, 313 (N.D. Tex. 2022). "To establish waiver of the right to appraisal, a party must demonstrate that: (1) the parties have reached an impasse; (2) after reaching an

impasse, one party did not invoke appraisal within a reasonable time; and (3) the other party will suffer prejudice as a result of the delay." *Id.*

"The key to the waiver inquiry is '[t]he question of intent to waive the right.'" *Woodward*, 2010 WL 1186323, at *4 (citing *In re Acadia Insurance Company*, 279 S.W.3d 777, 119 (Tex. App. – Amarillo 2007, orig. proceeding). "To constitute waiver the acts relied on must be such as are reasonably calculated to induce the assured to believe that a compliance by him with the terms and requirements of the policy is not desired, or would be of no effect if performed. The acts relied on must amount to a denial of liability, or a refusal to pay the loss." *In re Universal Underwriters*, 345 S.W.3d at 407.

## Analysis

PESLIC brings this motion to compel appraisal under its insurance policy, which states:

> N. Appraisal
> 1. If you and we fail to agree on the amount of loss or value of property, either may make written demand for an appraisal of the loss. In this event, each party will do the following:
>     a. Select a competent and impartial appraiser. You and we must notify the other of the appraiser selected within 20 days of the written demand for appraisal.
>         (1) The appraisers will state separately and independently the amount of the loss or damage.
>         (2) If the two appraisers fail to agree they will select an umpire. If the appraisers do not agree on the selection of an umpire within 15 days, they must request selection of an umpire by a judge of a court having jurisdiction.
>         (3) An agreement by any two will be binding as to the amount of the loss.
>     b. Pay the costs of its own appraiser.
>     c. Bear the expenses of the appraisal and umpire equally.
> 2. If there is an appraisal, we will still retain our right to deny the claim.

Dkt. No. 16 at 5.

PESLIC asserts that it timely invoked appraisal. *See id.* at 5-7.

And PESLIC requests that the Court abate the suit until appraisal is completed, as appraisal is a condition precedent to filing suit. *See id.* at 6.

Parks contends that PESLIC waived the right to invoke appraisal and requests that, if the Court finds appraisal appropriate, the Court should not abate the suit. *See* Dkt. No. 21.

The undersigned will address each argument in turn.

I. <u>Waiver of appraisal</u>

To establish waiver of appraisal, the parties must have 1) reached an impasse, 2) show there was unreasonable delay between the impasse and the insured requesting appraisal, and 3) show the delay was prejudicial. *See Gonzalez v. Allstate Texas Lloyds*, No. 7:19-CV-137, 2020 WL 520769, at *4 (S.D. Tex. Jan. 31, 2020).

The parties first disagree about the point of impasse. Impasse is an "apparent breakdown of good-faith negotiations." *In re Universal Underwriters*, 345 S.W.3d at 409. "[B]oth parties must be aware that further negotiations would be futile," and, "[i]f one party genuinely believes negotiations to be ongoing, it cannot have intended to relinquish its right to appraisal (unless it expressly waives it)." *Id.* Disagreement about the amount of loss does not necessarily implicate an impasse. *See id.* at 408.

PESLIC contends that impasse occurred when Parks produced a new, significantly higher estimate on July 13, 2023, or when Parks designated expert witnesses in August 2023. *See* Dkt. No. 1 at 2-3. PESLIC states that it was "unclear

whether there would be a dispute to the amount of loss" after Parks filed suit because it did not have appropriate documentation. *See id.* at 2.

Parks contends that impasse occurred at the latest when PESLIC sent the February 18, 2022 letter and PESLIC did not make a settlement offer or make additional payments. *See* Dkt. No. 21 at 7-8.

The undersigned agrees with PESLIC that the February 18 letter was not a point of impasse. The letter indicates that the amount of loss was disputed, that certain coverage was denied, and that PESLIC requested additional documentation to support Parks's claim of damages. *See* Dkt. No. 16-1 at 501. Short of being only a denial of coverage, the letter marks a clear "willingness to continue negotiations related to the … damage." *Hart Chesnutt*, 622 F. Supp. 3d at 313-14 (finding that a letter from the insurer to the claimant declaring an amount of damages and determining coverage but stating that, "[i]f you have available any information which has a bearing on the facts outlined above, please forward to our office for review and consideration," showed a willingness to continue negotiations).

PESLIC also showed a willingness to continue negotiations after sending the letter by stating in its Federal Rule of Civil Procedure 26(f) report that it was open to settlement and participating in alternative dispute resolution August 1, 2023. *See* Dkt. No. 24 at 3-4; Dkt. No. 13.

Parks relies on *Jai Bhole, Inc. v. Emps. Fire Ins. Co.*, which found impasse occurred before an unsuccessful mediation. No. CIV.A. G-10-522, 2014 WL 50165, at *2 (S.D. Tex. Jan. 7, 2014).

But, in *Jai Bhole*, the defendants asserted a defense of accord and satisfaction rather than negotiate and had filed three motions for summary judgment asserting the defense. *Id.* Here, PESLIC has not asserted a similar defense or made attempts by Parks "to negotiate a settlement futile." *Id.*

And, when courts have declared denial of claim coverage to be an impasse, it has been when the insurance company found there was no coverage available or there were no further negotiations after denial. *See Elevia*, 2020 WL 6192008, at *2; *In re Guideone Nat'l Ins. Co.*, No. 05-15-00981-CV, 2015 WL 5050233, at *2 (Tex. App. – Dallas Aug. 27, 2015, orig. proceeding) (finding impasse before mediation when there was a "denial of the claim, its insured filing suit, and the absence of any ongoing negotiations from [the date the insurance company only partially paid claimant's request] through the date of mediation").

But the undersigned does not agree with PESLIC that the new estimate indicated that the parties refused to negotiate further. PESLIC participated in mediation weeks after this estimate. The undersigned has found no case where designation of experts indicated an impasse, but it is possible that unsuccessful mediation in conjunction with designating experts demonstrated further negotiations would be futile.

While the undersigned acknowledges unsuccessful mediation is not automatically the point of impasse, courts have found that unsuccessful mediation can be a point of impasse. *See Nourian v. Onebeacon Servs., LLC*, No. 4:13-cv-466-Y, 2014 WL 12576932, at *2 (N.D. Tex. Apr. 3, 2014) (finding unsuccessful mediation

the point of impasse); *accord Be Rios, Ltd. v. Nationwide Prop. & Cas. Ins. Co.*, No. 5:18-CV-01297-OLG, 2020 WL 6123129, at *2 (W.D. Tex. June 12, 2020); *Nemo Cay Resort Townhome Ass'n, Inc. v. Underwriters at Lloyd's, London Subscribing to Cont. Ctw001033*, No. 2:19-CV-386, 2020 WL 4934370, at *3 (S.D. Tex. Apr. 22, 2020).

Here, the parties participated in mediation on August 1, 2023, and the mediator reported that settlement negotiations were ongoing. *See* Dkt. No. 13 at 1. Since it is unclear when negotiations stopped after the August 1 mediation, the undersigned finds August 1, 2023 to be the date of impasse.

And, so, the undersigned must determine whether PESLIC has unreasonably delayed invoking appraisal.

"[W]hile an unreasonable delay is a factor in finding waiver, reasonableness must be measured from the point of impasse, as several cases have recognized." *In re Universal Underwriters*, 345 S.W.3d at 408.

Because the appraisal clause does not contain a deadline to invoke appraisal, the Court must determine if the delay is reasonable. *See Skypac Corp. v. Great Lakes Reinsurance (UK) SE*, No. 1:16-CV-115, 2016 WL 9414096, *2 (E.D. Tex. Dec. 16, 2016).

24 days passed between the date of impasse and the date on which PESLIC invoked appraisal. This is not an unreasonable amount of time to invoke appraisal. *See Hart Chesnutt*, 622 F. Supp. 3d at 315 (finding three months between impasse and invoking appraisal was not unreasonable).

But unreasonable delay cannot only be measured by time period. It also requires "an examination of the circumstances and the parties' conduct." *In re Universal Underwriters*, 345 S.W.3d at 408. And, if delay is unreasonable, the party must show it has been prejudiced by the delay. *See Gonzalez*, 2020 WL 520769, at *4.

Parks contends that PESLIC could have invoked appraisal earlier and that, when litigation commenced, PESLIC continued to participate in litigation, including by expressing a need for expert witnesses and depositions in the joint Rule 26(f) report. *See* Dkt. No. 21 at 9.

While PESLIC could have invoked appraisal as soon as it knew the loss was disputed, PESLIC is not required to invoke appraisal until there is an impasse. *See In re Universal Underwriters*, 345 S.W.3d at 408 ("An impasse is not the same as a disagreement about the amount of loss. Ongoing negotiations, even when the parties disagree, do not trigger a party's obligation to demand appraisal.").

And, even if delay is unreasonable, Parks must still show prejudice from the delay. Parks argues that the delay has caused it to incur unnecessary expenses in continuing litigation, that the appraisal will cause additional expense, and that appraisal could limit its recovery on its extra-contractual claim. *See* Dkt. No. 21 at 10-13. Parks also alleges that PESLIC has strategically delayed invoking appraisal, including waiting until after Parks identified expert witnesses and submitting the motion to compel on the date that PESLIC's expert witness designation was due, prejudicing Parks with its "gamesmanship." *Id.* at 3, 8.

And, as another court has summarized,

> "[a]ppraisals require no attorneys, no lawsuits, no pleadings, no subpoenas, and no hearings.' [*State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 894 (Tex. 2009).] Certain benefits of appraisal are lost or diminished if the appraisal is sought after the parties have already engaged in litigation. *See id.*; *see also JNH Holding, Inc. v. Nationwide Prop. & Cas. Ins. Co.*, No. 4:16-CV-00866, 2017 WL 10191090, at *1–2 (E.D. Tex. Sept. 18, 2017) (Mazzant, J.). Prejudice may thus be found where the appraisal is sought after a party has been required to "incur the costs of hiring experts to assess its damages for litigation purposes, effectively reducing or eliminating entirely the efficiencies the appraisal process is intended to provide." *Id.* at *2.

*Elevia,* 2020 WL 6192008, at *2.

In alleging manipulation, Parks contends that an appraisal award could limit it from recovery on other claims. *See* Dkt. No. 21 at 11. It further asserts that PESLIC has a tactical advantage from filing for appraisal after reviewing Parks's designation of expert witnesses. *See id.* at 11, 8.

Courts have noted that it is inappropriate to reward a party that uses appraisal as a means of manipulation. *See In re Universal Underwriters*, 345 S.W.3d at 411. But the undersigned fails to see how Parks is prejudiced by PESLIC seeing Parks's expert witness designations before appraisal. And, while the issue is not settled, other courts have held that an appraisal award would not limit recovery on other claims. *See Jai Bhole*, 2014 WL 50165, at *2 n.1.

The undersigned does not find prejudice based on Parks's conjecture.

There is no dispute that Parks has incurred expense in designating experts and participating in litigation, some of which could have likely been avoided if appraisal was invoked earlier, and that Parks will incur expense with appraisal. And courts have found this to be a factor in finding prejudice. *See Meadows*, 2020 WL

6122543, at *2 (finding significant expense in designating experts and participating in litigation showed prejudice).

But the undersigned is persuaded that it is inappropriate to attribute prejudice to litigation or appraisal expenses in this case where Parks could have invoked appraisal itself. *See* Dkt. No. 24 at 4. While it is not an automatic rule, "it is difficult to see how prejudice could ever be shown when the policy, like the one here, gives both sides the same opportunity to demand appraisal. If a party senses that impasse has been reached, it can avoid prejudice by demanding an appraisal itself." *In re Universal Underwriters*, 345 S.W.3d at 412.

Because Parks could have demanded appraisal before filing suit, the undersigned does not find prejudice.

And, because the elements for waiver are not met, the Court should compel appraisal.

II. Abatement

PESLIC contends that abatement is appropriate because appraisal is a condition precedent to filing suit and because it would serve judicial economy. *See* Dkt. No. 16 at 5-6. PESLIC also argues abatement would avoid conflicting outcomes between other claims and the appraisal. *See* Dkt. No. 24 at 5-6.

Parks contends that abatement is not appropriate because the amount of loss is only one part of the conflict and that appraisal is not a condition precedent when invoked during litigation.

"Appraisal is intended to take place before suit is filed," leading courts to declare it a condition precedent to filing suit. *State Farm Lloyds*, 290 S.W.3d at 894. But "a party may waive a condition precedent required prior to filing suit, including a right of appraisal of the amount of loss." *In re Allstate Vehicle & Prop. Ins. Co.*, 549 S.W.3d 881, 887 (Tex. App. – Fort Worth May 3, 2018, no pet.).

And courts have held that, absent policy language to the contrary, Texas law does not "mandate that an insurer request appraisal before the insured files a lawsuit." *Devonshire Real Est. & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-cv-2199-B, 2013 WL 12124308, at *3 (N.D. Tex. Mar. 26, 2013).

While abatement can be an appropriate remedy when trying to enforce a condition precedent, it is not required. *See Hart Chesnutt*, 622 F. Supp. 3d at 316. "Courts retain discretion to abate proceedings pending appraisal." *Id.*

Parks contends that "[t]he dispute in this case is more nuanced than a straightforward disagreement over the appropriate costs of covered repairs," but that PESLIC "contends that all damages sought by Plaintiff are those which are not covered under the Policy and thus preclude contractual liability." Dkt. No. 21 at 5. Parks brings a breach of contract claim and violations of the Texas Insurance Code, including violations of Texas Insurance Code, Chapter 542, Subchapter B, the Prompt Payment of Claims Act; and the Texas Insurance Code, Sections 541.060(a)(2)(A), 541.060(a)(3), and 541.060(a)(7). *See* Dkt. No. 1-2 at 10. Parks alleges that PESLIC violated the Texas Insurance Code by:

- failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which its liability has become reasonably clear;

- failing to promptly provide a reasonable explanation of the basis in law or fact for the denial of Plaintiffs claims; and

- refusing to pay Plaintiffs' claim without conducting a reasonable investigation of the claim.

*Id.*

Texas courts have refused to order abatement when there are issues other than the amount of loss in dispute, such as coverage. *See Abbey on Preston H.O.A. v. Admiral Ins. Co.,* No. 3:13-cv-102-N, 2013 WL 12143827 (N.D. Tex. May 30, 2013) (finding when both liability and damages are in dispute abatement was not appropriate); *accord Martinez v. Nationwide Gen. Ins. Co.*, No. 3:19-cv-1541-X, 2020 WL 360639, at *4 (N.D. Tex. July 2, 2020) (declining to abate during appraisal when plaintiff brought extracontractual claims including negligence, breach of good faith and fair dealing, deceptive trade practices, and violations of the Texas Insurance Code).

Because Parks brings extracontractual claims that will not be resolved by appraisal, the undersigned recommends the Court not abate the case during appraisal.

## Conclusion

The Court should grant in part and deny in part Defendant's Motion to Compel Appraisal and Abatement [Dkt. No. 16] and compel appraisal but decline to abate the case.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 7, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE